IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PEGGY STITH, *Plaintiff/Appellee,*

*v.*

BELLA VITA HEALTH & REHABILITATION CENTER, et al.,
*Defendants/Appellants.*

No. 1 CA-CV 24-0484

FILED 07-06-2026

Appeal from the Superior Court in Maricopa County
No.  CV2016-050619
The Honorable Melissa Iyer Julian, Judge

**REVERSED**

COUNSEL

Law Office of Ilya E. Lerma, Esq., LLC, Phoenix
By Ilya E. Lerma
*Co-Counsel for Plaintiff/Appellee*

Complex Appellate Litigation Group LLP, San Francisco, CA
By Brian A. Sutherland, Michael von Loewenfeldt
*Co-Counsel for Plaintiff/Appellee*

Ensign Services, Inc., Higley
By Michael J. Ryan, Michael S. Redhair
*Co-Counsel for Defendants/Appellants*


Jones, Skelton & Hochuli P.L.C., Phoenix
By Eileen Dennis Gilbride
*Co-Counsel for Defendants/Appellants*

---

## OPINION

Judge James B. Morse Jr. delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins joined. Judge D. Steven Williams dissented.

---

**M O R S E**, Judge:

**¶1**         Defendant Bella Vita Health & Rehabilitation Center ("Bella Vita") asserts the superior court erred by (1) denying its Arizona Rule of Civil Procedure ("Rule") 50(a) motion for judgment as a matter of law ("JMOL") at the close of plaintiff Peggy Stith's case-in-chief and (2) allowing Stith to provide *prima facie* causation evidence for the first time in her rebuttal case. Stith argues that denial of a Rule 50(a) JMOL is not reviewable on appeal and that any review of the denied JMOL must include evidence she presented on rebuttal. For the reasons set forth below, denial of a Rule 50(a) JMOL motion is reviewable on appeal and our review is limited to the evidence presented before the close of Stith's case-in-chief.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         Bella Vita provided rehabilitation for Stith following neck surgery. As Bella Vita's nursing staff transferred Stith to a bed, her head hit a wall. Nursing staff checked Stith and found no swelling, bruising, or outward signs of injury. Nursing staff, however, did not contact Stith's physician or perform checks to detect potential brain trauma, instead administering pain medicine and allowing Stith to sleep. The next morning, Bella Vita staff found Stith unresponsive and took her to the hospital, where she was diagnosed with a subdural hematoma (commonly known as a brain bleed) and underwent surgery. Stith survived but suffered significant and permanent brain damage as a result.

¶3        Stith later sued Bella Vita, alleging that the failure to contact a physician and perform neurological checks worsened her condition. Specifically, she argued that her subdural hematoma would have been detected earlier, increasing her chances of a more favorable outcome, had Bella Vita's staff performed regular neurological checks after her head hit the wall.

¶4        At trial, Stith presented testimony from standard-of-care expert Eleanor Tache, an experienced nurse. She testified that when a patient suffers a head strike, nurses should perform an initial assessment of the patient before notifying a physician and conducting neurological checks. Rena Castro, Bella Vita's director of nursing, confirmed that neurological checks are performed at regular, timed intervals after a head strike to detect changes in a patient's cognitive function. Tache further testified that Bella Vita's failure to perform these neurological checks after Stith's head hit the wall breached the standard of care. Two of Stith's other expert witnesses—Dr. Woodcock and Dr. Chaudry—opined that Stith's subdural hematoma was an acute event and not the result of a chronic, pre-existing condition. But, in her case-in-chief, Stith did not present expert-witness testimony that the failure to conduct neurological checks caused Stith's subdural hematoma or that her outcome would have been different with proper checks.

¶5        After Stith rested her case-in-chief, Bella Vita moved for JMOL under Rule 50(a). Bella Vita argued that Stith had not presented expert testimony on causation to establish that conducting neurological checks would have led to a better outcome. Bella Vita also argued that Arizona law prohibits juries from inferring causation in medical cases. In response, Stith argued that the expert-witness testimony she had provided allowed the jury to infer that notifying a physician and performing neurological checks would have resulted in a different outcome. The superior court denied the JMOL motion, finding that Stith's expert-witness testimony provided sufficient evidence of causation.

¶6        After Bella Vita presented its case and rested, Stith recalled Dr. Woodcock in rebuttal. He testified neurological checks were "designed specifically" to discover subdural hematoma symptoms and "prevent this type of outcome." Dr. Woodcock testified that, had Bella Vita's staff conducted these checks, Stith's symptoms would have been detected earlier, leading to a better "neurologic outcome," and potentially "prevent[ing] the degree of severe brain damage." The jury ruled in Stith's favor and awarded her ten million dollars in damages. Bella Vita renewed its JMOL motion under Rule 50(b), which the superior court denied.

**¶7**        Bella Vita timely appealed and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.        Reviewability of a Rule 50(a) Motion and Scope of Review.

**¶8**        Relying on *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006), Stith argues the denial of a Rule 50(a) motion is unreviewable on appeal. We disagree.

**¶9**        In *Unitherm*, the United States Supreme Court addressed whether a Federal Rule of Civil Procedure ("Federal Rule") 50(a) motion preserves a sufficiency of the evidence challenge on appeal when the motion is not renewed under Federal Rule 50(b) after the jury's verdict. *See Unitherm*, 546 U.S. at 396. The Supreme Court held that, because "respondent failed to renew its preverdict motion as specified in [Federal] Rule 50(b), there was no basis for review of respondent's sufficiency of the evidence challenge in the Court of Appeals." *Id.* at 407. That statement, however, implies that it is appropriate to review a pre-verdict Federal Rule 50(a) motion when a party renews its sufficiency of the evidence challenge under Federal Rule 50(b). And, contrary to Stith's argument, post-*Unitherm* federal appellate courts continue to evaluate Federal Rule 50(a) denials as long as parties preserve the issue in a post-verdict Federal Rule 50(b) motion. *See, e.g.*, *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1215–21 (10th Cir. 2013) (analyzing the denial of a Federal Rule 50(a) motion); *Alejandro-Ortiz v. PREPA*, 756 F.3d 23, 26–30 (1st Cir. 2014) (same); *Kevin M. Ehringer Enterprises, Inc. v. McData Servs. Corp.*, 646 F.3d 321, 324–28 (5th Cir. 2011) (same); *MGE UPS Sys., Inc. v. GE Consumer and Indus., Inc.*, 622 F.3d 361, 365–370 (5th Cir. 2010) (same).

**¶10**        While Arizona cases have not directly opined on whether the denial of a Rule 50(a) motion is appealable, in *Glazer v. State*, 237 Ariz. 160, 162–63, 167, ¶¶ 7, 29 (2015), our supreme court reviewed the denials of both JMOL motions when the appealing party preserved its Rule 50(a) motion through a post-trial Rule 50(b) motion. This Court has also implied that review of Rule 50(a) motions is appropriate if followed by a post-verdict Rule 50(b) motion, by refusing to review the denial of a Rule 50(a) motion when no 50(b) motion was made. *See Williams v. King*, 248 Ariz. 311, 317, ¶¶ 30–31 (App. 2020). Because Bella Vita renewed its sufficiency of the evidence challenge under Rule 50(b), it is appropriate to review the denial of its pre-verdict Rule 50(a) motion. *See Glazer,* 237 Ariz. at 162–63, 167, ¶¶ 7, 29.

¶11      Stith further argues that our review must consider all the trial evidence—including Dr. Woodcock's rebuttal testimony—rather than just the evidence existing at the time the superior court ruled on the motion.  In reviewing the denial of a Rule 50(a) JMOL, preserved by a post-verdict Rule 50(b) motion, our supreme court instructs that "the same standard applies for deciding a motion for summary judgment or for JMOL," and stated that "an appellate court should also review de novo the grant or denial of a motion for JMOL." *Id.* at 167, ¶ 29; *see also Roberson v. Wal-Mart Stores, Inc.*, 202 Ariz. 286, 290, ¶ 14 (App. 2002) ("The test for granting a motion for JMOL is the same as that for granting a motion for summary judgment."). Linking review of JMOL and summary judgment is particularly instructive because, when reviewing a motion for summary judgment, this Court reviews only the "part of the record before the trial court at the time it considered the motion." *GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4 (App. 1990); *cf. also Bennett v. Pima County Community College District*, 2 CA-CV 2016-0019, 2016 WL 6406435, at *5, ¶¶ 22, 25 (Ariz. App. Oct. 28, 2016) (mem. decision) (limiting review of the superior court's mid-trial grant of JMOL "to what was before the court when it granted JMOL" and excluding post-JMOL testimony (citing *GM Dev. Corp.*, 165 Ariz. at 4)).

¶12      This approach is directed by Rule 50(a)'s text, which permits a party to move for JMOL under the rule only if the non-moving party has been "fully heard on an issue."  Ariz. R. Civ. P. 50(a).  Although published Arizona caselaw does not define the moment in time a plaintiff is "fully heard" for Rule 50(a) purposes, because Federal Rule 50 is essentially identical to Arizona's Rule 50, we can look to federal court interpretations of the Federal Rules for guidance.  "Although a federal court's interpretation of a federal procedural rule is 'not binding in the construction of our rule,' we recognize its instructive and persuasive value and that 'uniformity in interpretation of our rules and the federal rules is highly desirable.'" *Flynn v. Campbell*, 243 Ariz. 76, 80, ¶ 9 (2017) (quoting *Orme Sch. v. Reeves*, 166 Ariz. 301, 304 (1990)); *see also Heritage Village II Homeowners Ass'n v. Norman*, 246 Ariz. 567, 572, ¶ 19 (App. 2019) (using federal court's interpretation of "substantively indistinguishable" procedural rules).

¶13      Generally, under the Federal Rules, a plaintiff has been "fully heard" at the close of the plaintiff's case-in-chief. *See Greene v. Potter*, 557 F.3d 765, 768 (7th Cir. 2009) (stating it is the "[c]ommon practice" for parties to make Federal Rule 50(a) motions at the end of the case-in-chief); *Echeverria v. Chevron USA Inc.*, 391 F.3d 607, 610 (5th Cir. 2004) ("In practice, a party has been fully heard when [s]he rests h[er] case."); *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir. 2004) ("[A] party has been 'fully heard' for purposes of Rule 50(a) when the party has submitted all of

its evidence on the relevant claim or issue. Accordingly, a defendant may move for judgment as a matter of law at the close of the plaintiff's evidence.") (internal citations omitted); *cf. Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 930 (9th Cir. 2007) (finding the district court erred by granting JMOL under Federal Rule 50(a) before hearing from "a key witness scheduled to provide relevant and admissible testimony as part of the party's case-in-chief on an essential issue"). And, in the context of requesting a judgment on partial findings, Federal Rule 52 provides that such "motions may be granted either for or against the plaintiff at the conclusion of the plaintiff's case-in-chief." *DLG Mortgage Capital, Inc. v. Sheridan*, 975 F.3d 358, 365–67 (3d Cir. 2020).

¶14        We are persuaded by these authorities. Plaintiffs are responsible for presenting *prima facie* evidence to support their claims during their case-in-chief. By resting, Stith affirmed she had presented all the evidence necessary to satisfy her burden. At that point, the superior court was equipped to determine whether sufficient evidence existed to submit the case to the jury. Accordingly, we conclude Stith was "fully heard" for Rule 50(a) purposes when she rested her case-in-chief. *See Greene*, 557 F.3d at 768. In reviewing the denial of Bella Vita's Rule 50(a) motion, we are limited to the admitted evidence at the time that Stith rested her case.

## II.        Rule 50(a) Motion.

¶15        Bella Vita argues the superior court erred in denying its Rule 50(a) motion because Stith failed to present the required causation testimony in her case-in-chief. We agree.

¶16        The parties dispute the applicable standard of review of the denial of a Rule 50(a) motion. Stith, citing *Unitherm*, argues that the denial of a Rule 50(a) motion is discretionary. 546 U.S. at 406. Bella Vita argues we should review the superior court's Rule 50(a) denial de novo. As noted above, *supra* ¶ 11, our supreme court has instructed appellate courts to review de novo the denial of a Rule 50(a) motion. *See Glazer*, 237 Ariz. at 167, ¶ 29 (holding that "an appellate court should [] review de novo the grant or denial of a motion for JMOL"). And, under either standard of review, the superior court committed legal error. *See Voice of Surprise v. Hall*, 255 Ariz. 510, 513, ¶ 11 (2023) ("An abuse of discretion occurs when a court commits a legal error by misinterpreting or misapplying the law.").

¶17        Rule 50(a) empowers a court to grant JMOL if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [a]

party" on issues necessary to the party's claim or defense. Ariz. R. Civ. P. 50(a).

¶18 To establish negligence, a plaintiff must prove, among other things, "a causal connection between the defendant's conduct and the resulting injury." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). Our supreme court has held "that a jury in a medical malpractice case may not be left to 'infer' causation without the guidance of expert testimony where the cause of death is disputed and not obvious to an ordinary person." S*ampson v. Surgery Center of Peoria, LLC*, 251 Ariz. 308, 309, ¶ 1 (2021). Instead, through expert testimony, "a plaintiff must show 'a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred.'" *Id*. at 311, ¶ 15 (quoting *Barrett v. Harris*, 207 Ariz. 374, 378, ¶ 11 (App. 2004)). Such proof must establish that "causation is probable, not merely speculative," and must be in the form of expert testimony "unless causation is 'readily apparent to the jury on the facts.'" *Id*. at 311–12, ¶¶ 15, 19 (quoting *Rasor v. Northwest Hospital LLC*, 243 Ariz. 160, 166, ¶ 32 (2017)).

¶19 The plaintiff in *Sampson* presented expert testimony that a surgery center failed to meet the standard of care for post-surgery monitoring of a child who died when he was "unable to breathe from the after-effects of surgery and anesthesia." *Id.* at 310, 312, ¶¶ 7, 17. But the expert did not specifically opine that insufficient observation caused the patient's death. *Id*. at 312, ¶ 17. And our supreme court rejected this Court's conclusion that the *Sampson* plaintiff presented sufficient evidence from which the jury could infer that failure to provide proper monitoring was a proximate cause of the child's death. *Id*. at ¶¶ 18–19. Instead, the supreme court concluded that the expert's "assertion that a longer observation period could have prevented [the child's] death is therefore insufficient as a matter of law to prove causation." *Id*. at 313, ¶ 23.

¶20 This case is indistinguishable. Stith's expert witnesses testified that Bella Vita breached the standard of care. But during Stith's case-in-chief, none of these experts testified that the outcome would have been different absent the breach. *See supra* ¶ 4. Bella Vita's Rule 50(a) motion pointed out this deficiency and, in opposition, Stith acknowledged that an inference must be made to establish causation, i.e., that Stith's outcome would have been different had Bella Vita's staff notified a physician and conducted neurological checks. But we cannot "connect the dots between" Bella Vita's alleged standard-of-care breach and Stith's claimed adverse outcome without specific expert testimony doing so. *See*

*Sampson*, 251 Ariz. at 313, ¶ 23; *see also Windhurst v. Ariz. Dep't of Corrections*, 256 Ariz. 186, 196–97, ¶¶ 42–43 (2023) (stating we do not permit a jury to make inferences to "determine the cause of [an injury]"). In her case-in-chief, and at the time of the Rule 50(a) motion, Stith had not presented expert testimony that conducting neurological checks or notifying a physician would have changed the outcome. Absent such evidence, Stith failed to establish causation.

¶21 Stith provided causation testimony during rebuttal, *after* her case-in-chief and *after* the defense's case. But, as noted *supra* ¶ 14, we only view the evidence as it stood when Stith rested after her case-in-chief and the superior court ruled on the Rule 50(a) motion. Because Stith had not presented causation evidence by that time, and because Stith's evidentiary presentation in her case-in-chief failed in that essential element, the superior court should have granted the motion. *See Sampson*, 251 Ariz. at 313, ¶¶ 23–24; *Roberson*, 202 Ariz. at 290, ¶ 14; *GM Dev. Corp.*, 165 Ariz. at 4; *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004) ("[A] [Federal Rule 50(a)] motion is properly granted 'if the nonmoving party failed to make a showing on an essential element of h[er] case with respect to which [s]he had the burden of proof.'" (quoting *Singer v. Dungan*, 45 F.3d 823, 828 (4th Cir. 1995))).

¶22 The Michigan Court of Appeals reached the same conclusion when faced with a nearly identical situation in *Tobin v. Providence Hospital*, 624 N.W.2d 548 (Mich. App. 2001). There, a man died after receiving a blood transfusion during hip-replacement surgery. *Tobin*, 624 N.W.2d at 551. The decedent's wife sued the hospital for malpractice, claiming its staff violated the applicable standard of care by failing to monitor and record the decedent's temperature during his operation. *Id.* at 556. The hospital moved for JMOL after plaintiff rested her case-in-chief, arguing plaintiff failed to present testimony that any violation of the standard of care caused the decedent's death. *Id.* The trial court denied the motion and allowed plaintiff to offer the missing testimony during rebuttal. *Id.* On appeal after a plaintiff's verdict, the Michigan Court of Appeals concluded the superior court "committed error requiring reversal" in denying the hospital's motion for JMOL because plaintiff's case-in-chief lacked essential evidence to support her claim. *Id.* at 557. In doing so, the appellate court disregarded the rebuttal testimony and only considered the evidence presented before defendant moved for the directed verdict. *Id.*

¶23 Stith insists *Tobin* is inapposite because Michigan's directed verdict rule does not mirror Arizona's Rule 50(a). *Compare* Ariz. R. Civ. P. 50(a) ("If a party has been fully heard on an issue during a jury trial and the

court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the [non-moving] party . . . .") *with* Mich. Ct. R. 2.516 ("A party may move for a directed verdict at the close of the evidence offered by an opponent. The motion must state specific grounds in support of the motion. If the motion is not granted, the moving party may offer evidence without having reserved the right to do so, as if the motion had not been made.").

¶24 Stith specifically notes that our rule includes a "may" directive, indicating that the decision to grant or deny a Rule 50(a) motion is discretionary. Because Michigan's rule lacks the same language, Stith argues that *Tobin* "provides no guidance" on the interpretation of Rule 50(a). While it is true that Michigan's rule lacks the same permissive directive as Rule 50(a), it also lacks any mandatory "must" or "shall" directive. Because the Michigan rule has neither mandatory nor permissive language and *Tobin* presents nearly identical circumstances, we consider *Tobin* persuasive.

¶25 We decline to adopt Stith's position that Rule 50(a)'s permissive language means that a superior court can never err by denying a JMOL motion. Stith does not cite any case in which an appellate court affirmed the denial of a mid-trial Rule 50(a) motion when the plaintiff failed to present evidence for an essential element of her claim at the time the trial court ruled on the motion. But federal courts have reversed the denial of such a motion when the plaintiff failed to prove, in their case-in-chief, an essential element of a claim. *See Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 366 (3d Cir. 2000) (holding that, because the appellee failed to introduce evidence essential to his disability claim, "the District Court [] erred in denying the [appellant's] initial motion for judgment as a matter of law"); *see also MGE UPS Sys., Inc.*, 622 F.3d at 366–69 (concluding the district court erred by denying the Federal Rule 50(a) motion because the non-moving party failed to establish a *prima facie* element of its copyright infringement claim).

¶26 Moreover, Rule 50(b) contains the same permissive language as Rule 50(a). Ariz. R. Civ. P. 50(b) (stating the superior court, in ruling on a renewed JMOL motion, *may* "allow judgment on the verdict," "order a new trial," or "direct the entry of [JMOL]" (emphasis added)). "We 'presume a word or phrase bears the same meaning throughout a text.'" *State Farm Mut. Auto. Ins. Co. v. Frank*, 257 Ariz. 255, 264, ¶ 38 (App. 2024) (quoting *Fann v. State*, 251 Ariz. 425, 442, ¶ 60 (2021)). Accepting Stith's argument—that "may" in Rule 50(a) confers limitless discretion—a superior court could

also never err by denying a post-verdict Rule 50(b) motion. Yet appellate courts find error in this scenario. *See College Book Centers, Inc. v. Carefree Foothills Homeowners' Ass'n*, 225 Ariz. 533, 544, ¶ 43 (App. 2010) (holding the superior court erred in denying a party's JMOL motion); *ABCDW LLC v. Banning*, 241 Ariz. 427, 440, ¶ 65 (App. 2016) (reversing the judgment against appellants because they were entitled to JMOL); *accord Tan Lam v. City of Los Banos*, 976 F.3d 986, 1003 (9th Cir. 2020) (concluding the district court erred by denying appellants' Federal Rule 50(b) motion because there was insufficient evidence to support the jury's verdict); *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 496 (6th Cir. 2020) (same).

**¶27**     Thus, Rule 50(a)'s permissive wording does not insulate superior court rulings from appellate review. Our review of the record reveals that when Stith rested her case-in-chief, she had failed to provide *prima facie* evidence of causation—an essential element to her medical malpractice claim. Thus, a "reasonable jury would not have a legally sufficient evidentiary basis" to rule for Stith, *see* Ariz. R. Civ. P. 50(a)(1), and Bella Vita was entitled to JMOL.

**¶28**     As emphasized by our dissenting colleague, i*nfra* ¶¶ 41–43, we acknowledge that if the superior court properly granted Bella Vita's Rule 50(a) motion, then Stith could have moved to reopen her case-in-chief to attempt to cure the causation defect. *See Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, 182, ¶ 10 (App. 2011) ("[R]ule 50(a) 'is based upon the premise that the claimed omission of proof might be cured by a reopening of the plaintiff's case if the trial court finds merit to the motion.'" (quoting *Chavez v. Tolleson Elementary Sch. Dist.,* 122 Ariz. 472, 476 (App. 1979))); *State v. Patterson*, 203 Ariz. 513, 514, ¶ 5 (App. 2002) ("[Superior] courts have broad discretion in deciding whether to reopen a case and admit additional evidence."). In that instance—assuming the superior court's grant of the hypothetical motion to reopen—Dr. Woodcock could have presented his causation testimony in Stith's case-in-chief. But Stith did not develop this argument in her briefing on appeal, except to support her contention that the superior court's denial was discretionary and, therefore, not an error. And, at the time the court considered the Rule 50(a) motion, Stith never suggested she either had or needed to present additional evidence. Finally, had Stith successfully reopened and presented causation evidence during its case-in-chief, Bella Vita could have attempted to respond to that evidence during its defense case. Thus, this factual scenario—what would have happened had the court not erred in denying the Rule 50(a) motion—is not before us, and we cannot consider "what might have occurred had the situation been different." *State v. Griswold*, 8 Ariz. App. 361, 363 (1968).

### III.    Dr. Woodcock's Rebuttal Testimony.

**¶29**        Because the superior court should have granted JMOL in favor of Bella Vita after Stith rested her case-in-chief, we need not consider whether the court erred by allowing Dr. Woodcock's causation testimony in rebuttal.

### CONCLUSION

**¶30**        We reverse the superior court's denial of JMOL and grant JMOL in favor of Bella Vita.

**W I L L I A M S**, J., dissenting:

**¶31**        I respectfully dissent for three reasons.

**¶32**        First, I question whether the denial of a motion for JMOL under Arizona Rule 50(a) is appealable. Before today, no Arizona case has expressly said so. My colleagues rely on *Glazer* to support their view, *supra* ¶¶ 10–11. But the *Glazer* court was primarily concerned with determining to what extent A.R.S. § 12-820.03 provides public entities with an affirmative defense against claims made for injuries arising out of roadway construction designs. 237 Ariz. at 162, ¶ 1. To the extent *Glazer* addressed substantive law for JMOLs, it did so in a single paragraph changing the standard of appellate review from an abuse-of-discretion standard to *de novo*. *Id.* at 167, ¶ 29. And though the supreme court reviewed both the denial of an initial motion for JMOL under Rule 50(a) and the denial of a renewed motion for JMOL under Rule 50(b), it did so in tandem. *Id.* at 167–68, ¶¶ 29, 35. Meaning, because there was no material change in the evidence put forward by the plaintiff between the initial and renewed motions for JMOL, the supreme court's analysis did not focus on the difference in evidence before the renewed motion,  but instead evaluated only whether the defendant had put forward sufficient evidence of an affirmative defense. *Id.* at 162–63, 167–68, ¶¶ 7, 30–35.

**¶33**        The *Glazer* court also reiterated that "[t]he denial of a motion for summary judgment generally is not an appealable order." *Id.* at 167, ¶ 28 n.4. Because an order denying summary judgment is generally not appealable, it seems that an order denying JMOL under Rule 50(a) would also generally not be appealable. *BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 590, ¶ 8 (App. 2021).

11

¶34        Second, though the standard for granting or denying JMOL and summary judgment is the same, the rules governing these two motions differ in a significant way. Under Rule 56 (Arizona's summary judgment rule), the trial court is required to grant summary judgment when no genuine issue of material fact remains and judgment is warranted as a matter of law. Ariz. R. Civ. P. 56(a) ("The court *shall* grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." (emphasis added)).

¶35        To the contrary, Rule 50(a) places no such obligation upon the trial court *even if* the court determines a reasonable jury has no legal basis to find for the opposing party on that issue. Ariz. R. Civ. P. 50(a) ("If . . . the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court *may*: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." (emphasis added)).

¶36        Rule 56(a) is compulsory. Rule 50(a) is permissive. In truth, Rule 50(a) encourages courts to let trials play out to completion and discourages them from calling contests at halftime. For at least that reason, I would not endorse a lockstep approach for appellate review of a trial court's treatment of motions under these two rules. "Linking" the two, *supra* ¶ 11, is particularly problematic when appellate review of a mid-trial motion for JMOL is limited to the record at the time the trial court considered the motion. That is because limiting our review of the record "could lead to the absurd result that one who has sustained his position after a full trial and a more complete presentation of the evidence might nevertheless be reversed on appeal because," at the time of the initial motion for JMOL, he had failed to adequately establish his *prima facie* case. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 537, ¶ 19 (App. 2004) (citation modified). Today's opinion does exactly that.

¶37        Third, I disagree with my colleagues what it means to be "fully heard" for Rule 50(a) purposes. As with statutory interpretation, we interpret rules by determining the meaning of the words used. *Spring v. Bradford*, 243 Ariz. 167, 170, ¶ 12 (2017); *see Matter of Conservatorship of Chalmers*, ___ Ariz. ___, ___, ¶ 12, 571 P.3d 885, 888 (2025).

¶38        "Fully" means "totally or completely." *Fully*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=

fully (last visited July 1, 2026). It also means "in a full manner or degree: completely." *Fully*, Merriam-Webster, https://www.merriam-webster .com/dictionary/fully (last visited July 1, 2026). Because we read each rule in context, and where applicable, as part of a broader rule scheme, *see Chalmers*, ___ Ariz. at ___, ¶¶ 16–18, 571 P.3d at 889, to be "fully heard" for Rule 50(a) purposes is best understood when read in conjunction with Rule 50(b). Rule 50(b) makes clear that "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury." In other words, once the court denies a Rule 50(a) motion, the case is given to the jury to deliberate over and decide.

**¶39** But Rule 40, the "rule govern[ing] jury trials," outlines the order in which a "trial should proceed" before a jury decides the case. Ariz. R. Civ. P. 40(a), (c), (e). After preliminary jury instructions and opening statements, the parties "introduce evidence in the following order: (A) *plaintiff*; (B) defendant; (C) other parties, if any . . . ; (D) *plaintiff's rebuttal evidence*; (E) defendant's rebuttal evidence . . . ; and (F) rebuttal evidence from other parties . . . ." Ariz. R. Civ. P. 40(C)(3)(A–F) (emphasis added.). Under Rule 40, no case is submitted to a jury until the close of *all* evidence, not just a plaintiff's case-in-chief. How can a plaintiff be "fully heard" without the chance for rebuttal? She cannot.

**¶40** This reading of Rule 50(a) is consistent with Ninth Circuit cases the superior court aptly highlighted:

> The "major purpose" of a Rule 50(a) motion is "'to call the claimed deficiency in the evidence to the attention of the court and to opposing counsel at a time when the opposing party is still in a position to correct the deficit.'" *Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996) *quoting Lifshitz v. Walter Drake & Sons*, 806 F.2d 1426, 1429 (9th Cir. 1986) []. "Because a properly made motion under Rule 50(a) 'specif[ies] the law and the facts on which the moving party is entitled to judgment,' the motion itself will ordinarily inform the non-moving party of the deficiencies in its proof by identifying the dispositive fact, and the trial court's remaining responsibility will be to afford that party 'an opportunity to present any available evidence bearing on that fact' before ruling on the motion." *Waters v. Young*, 100 F.3d at 1441.

**¶41** When a party makes a Rule 50(a) procedural challenge to the sufficiency of evidence, *see Unitherm*, 546 U.S. at 399, the opposing party is

generally given a chance to correct any deficiency. *Marquette*, 227 Ariz. at 182, ¶ 10. The opportunity to present additional evidence makes good sense given that "courts are desirous of determining cases upon the merits, rather than upon matters of procedure." *Mendez v. Moya*, 54 Ariz. 44, 51 (1939).

¶42 To be sure, both Stith and the superior court were mistaken in concluding the jury could infer causation without expert testimony. *Supra* ¶¶ 18-20; *Sampson*, 251 Ariz. at 309–12, ¶¶ 1, 15, 19. In isolation, that omission would otherwise warrant JMOL for Bella Vita. But Stith corrected the deficiency before the case was submitted to the jury.

¶43 Had the superior court agreed with Bella Vita that Stith's causation evidence was lacking, as it should have, Bella Vita would lose its appeal since Stith would have reopened her case to put on the very evidence she did in rebuttal to cure the defect. Coming to that conclusion requires no speculation because the superior court unequivocally stated what it would have done. "Indeed, had Ms. Stith requested to reopen her case to supply additional causation testimony, this Court would have been obliged to allow it as 'necessary to the administration of justice.'" At oral argument, Bella Vita conceded the court could have done just that.

¶44 The real-world impact of today's opinion (1) prejudicially punishes Stith for the court's mistake in failing to recognize the merit of Bella Vita's Rule 50(a) motion when first made, and (2) closes the courthouse doors to Stith in a case the jury found egregious enough to warrant a substantial jury verdict based upon the merits of the claim. No one suggests the jury erred in reaching its merit-based verdict or its merit-based damages award. And had the superior court sided with Bella Vita, the evidence presented to the jury in Stith's reopened case-in-chief would have been identical to what was ultimately presented.

¶45 My research has not revealed, and my colleagues have not cited, any Arizona case overturning a jury's verdict under facts akin to those here—wherein a plaintiff failed to put forward *prima facie* evidence before the defendant moved for JMOL under Rule 50(a)—but then cured the evidentiary deficiency during rebuttal and before the defendant renewed the motion for JMOL under Rule 50(b).

¶46 Because the deficiency was corrected, and the matter was submitted to the jury only after Stith was fully heard, the court's error in failing to side with Bella Vita was harmless. *See Creach v. Angulo*, 189 Ariz. 212, 214 (1997) ("The question is not whether error occurred, but whether it is harmless, that is, whether it is of such technical, non-prejudicial character

that neither party may raise a legitimate or meritorious basis of complaint."); *see also* Ariz. R. Civ. P. 61 ("Unless justice requires otherwise, an error in admitting or excluding evidence — or any other error by the court or a party — is not grounds for . . . setting aside a verdict . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

¶47        I would affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR